Good morning, Your Honors. Jeremy Lawrence of Munger, Toulson, Olson on behalf of Petitioner Ana Rivera-Montenegro. Before you start, I should make a disclosure. Mr. Lawrence is a former law clerk of mine. I note that this will have nothing to do with my vote in the case, but welcome him and Ms. Thomas-Doris. So please proceed. Thank you, Your Honor. And I let Ms. Thomas-Doris know that last week, just so that she had an opportunity to know. So thank you for that. I'd like to try to reserve two minutes of my time for rebuttal, if I may. Please do. In this case, the petitioner's daughter, who is now 13 years old, received asylum from the immigration judge as part of these same proceedings. And petitioner herself did not receive asylum or withholding of removal by the time the proceedings were completed on a single ground, which was that the BIA found that there was a lack of a nexus between the persecution and a statutorily protected ground. And both on the particular social group aspect of petitioner's claim and the imputed political opinion aspect of petitioner's claim, we think that the BIA's determination was legal error and warrants at least a remand for the BIA to reconsider this case under the correct legal framework. And I think it's important on both points of particular social group and imputed political opinion to recognize what I believe the government concedes in its brief, which is that the BIA did not apply the mixed motives framework when it considered this claim. Setting aside whatever might have happened at the immigration judge level, the BIA, and again, the government on page 25 of its brief and 34 of its brief, I believe concedes that the BIA did not apply the mixed motives analysis. And I think that's critical here because the government proposes a new test that has no precedent in this court's cases. And I'll pause because I see Judge Bennett has one of the briefs open. No, no, please, please. I could read it to you if you'd like. Sure. Go ahead. Tell me what you're referring to. Yeah. On respondent's brief 25, the government says the agency had no need to reach the mixed motives analysis. And I take it that your view is that the the use of the term rather than it's compelling that they didn't apply the mixed motive analysis. That was that was our initial determination, our conclusion that we put forward in our opening brief. But I really think it's the government's concession in their respondents brief that I think rather than having to parse and close read the BIA's decision here, I think the parties are agreed that the BIA did not apply a mixed motives analysis. Now, counsel, help me here. My my understanding of that part of the argument, though, is if if the protected social group was no part of the motive, then you don't have any mixed motive. And to me, at least their argument. And if you would address it is that they wanted money and they had no notion of protected social group. At best, they preyed on the weak. And it happened that her weakness was part of the group. But it was no part of the motive and or the nexus at all. So can you a look at that from the legal point of view as a way of defending the government, but perhaps more strongly as a question of the nexus, the proper nexus analysis, is that a fact problem? Thank you, Your Honor. I think that that's both a legal and a factual issue here. And I think the fact aspect we're dealing with here and looking at the government's proposed legal test of is there any evidence whatsoever of a potential mixed motive? I think we have it on page 145 of the record where in petitioner's testimony, the the persecutors, when they increased the demand they're making of her. And this is, of course, the precipitating event that led her to leave the country because she was at this point so frightened for her life. It be when they increase their demand. That's the first time they specifically referenced her daughter and threatened her daughter. And so in that respect, they're specifically targeting at that point her status as a single mother in a unique way at that moment when they are. Why is that? Why does that? I understand mother. But isn't it sort of classic that extorters of every variety of threatened people's children? That is, there's nothing in what you just read that would be any different if it were a father. Thank you, Judge Boggs. Or a married mother. Right. And I think the critical point here is that when the extortion is done on the basis of a protected status, that's what takes it out of the realm of ordinary extortion where we wouldn't be granting asylum. But when is having a daughter, a protected status? Our our our position is that being a single mother in El Salvador without a male protector is a protected status. The BIA did not address that. So I was agreeing with that, except I mean, I was giving you that for the moment. But her testimony that you point to heavily doesn't say, ah, you must pay because you have no man hits. You have a daughter and I'll threaten the daughter. And I just said, how is that different if it were a man or if it were a married woman? Well, I think the context of El Salvador, where we have our expert Thomas Borman and Elizabeth Kennedy talking about the status of females in El Salvador and sort of the fact that it's understood in this culture. And when petitioner was receiving these threats that at her status as a single unmarried woman made her particularly vulnerable. And the gang was using that as their basis for threatening her. And I think importantly, the IJ used to made the finding that the that the gang was leveraging, using leverage. And that's why that's my question to you, counsel. The IJ said what I think is of the the administrative record. Now, it is obvious that the gang used the respondent status as an adult female who is living without a protective male in her household. They use that fact to intimidate the respondent in an effort to control her. Is that enough for us to find that her protected status was at least one motive? If we view that as a factual finding, is that enough? That's exactly right, Your Honor. And I would describe it this way. I was I wasn't stating I was asking. And let me put it this way. One, the finding about leverage is essentially finding that the gang was using petitioners protected status to inflict harm upon her. And when we view it that way, it sounds awfully a lot like something that should warrant a mixed motives analysis. But I think more importantly, in this case, precedents this court's precedents. We have the concept of escalation of threats and violence. And the nexus can be found when there is an escalation that's based on a protected status, even if the initial targeting wasn't on the basis of a protected status. And this, I think I would point you to the Barajas Romero case from 2017, where the petitioner was was captured by police and then essentially tortured. And that was on legitimate political legitimate reasons, independent of any protected status, apparently. But then when the petitioner expressed an opinion, a political opinion, the torture got worse. And at that point, the court said the escalation warrants a reconsideration of the nexus conclusion. Similarly, we have escalation being recognized in the Gore Harvey versus INS case from 1999 by this court, which is an en banc decision. The Perusa Mova case from 2009 recognized at the end of that case. That's a real ID case where at the end they said we don't have evidence of escalation in this case. But it was recognized escalation would have been a basis for nexus. Counsel, given the way the BIA treated what the IJ did, is there any relevance in your view to the IJ statement at page 82 of the administrative record that the gang is not going after this person because they are offensive? In some way, is that is that in any way relevant to our analysis here? The I don't think we have to inquire into the gangs, whether they favor or disfavor a group. The fact is, whether if you're being persecuted on the basis of your protected status, setting aside whether the gang thinks that protected status is offensive or not, I don't think that's really going to be relevant to this. Does that does that finding by the IJ in any way infect the remainder of the IJ's findings? I think the I think it may. And in addition, I think the IJ's focus on targeting the IJ a number of times, including on page 78, said the gang targeted her for reasons independent of her protected status. And then I think it's the escalation that the IJ didn't consider. And on page 145 is where the escalation in the form of increasing demands. And also escalation is relevant to the imputed political opinion. And I'll focus on the escalation point first and then turn to the points I made in the 28-J letter or reiterated in the 28-J letter. Lawrence, do you want to save any of your time for rebuttal or what's your pleasure? I will. I'd rather get through these points. Thank you. An imputed political opinion. What we have here is that the first time she spoke out against the gang, and that's a record 146, 150, 152. That's when they threatened her daughter and sent threatening notes to her. So we, again, have increasing severity of the threats as a result of her speaking out against the gang. And the BIA, again, did not analyze mixed motives on the political opinion aspect of the claim. The IJ actually never even concluded that there had been a nexus or no nexus on imputed political opinion. The IJ dismissed out of hand the imputed political opinion at the outset of the IJ's opinion saying this gang is not a de facto government, therefore it's not political. And that was the end of the IJ's analysis. The BIA went on to find a lack of nexus that the IJ had never found. And the Guerra case we cited in the 28-J letter makes it clear the BIA does not have fact-finding authority to do that. And it's the BIA's failure to defer to the IJ and allow the IJ to make that nexus finding in the first instance that here warrants remand for further consideration by the BIA. I'm happy to address any other questions you have, but I know I'm over time now. Now you're a little over time. We may give you a little chance for rebuttal, but let's hear a person make out. Good morning. Good morning from here, but also good morning to you, Your Honor. May it please the court, Nicole Thomas Doris for the government. Substantial evidence supports the agency's conclusion here that gangs extorted Ms. Rivera-Montenegro not because of her membership in a particular social group or an imputed political opinion or indeed any other protected ground in the act, but because the gangs were motivated to exert control over their territory, further their criminal activities, and gain money. Counsel, what's your response to Mr. Lawrence's point about mixed motive and the failure of the BIA to really deal with the issue of mixed motive? He cited a number of our cases that I gather you don't dispute. Mixed motive is one of the characteristics that we consider as well as the escalation point you make. Can you address both the mixed motive and perhaps the escalation as a separate issue? Yes, I'll start with the mixed motive question. As we argued in our brief, the agency did not need to get into the centrality or the roles of various or mixed motives because the agency determined that a protected ground was not even a motive in the mix to be considered. Counsel, where? Point to where the agency did that specifically, please. Well, the immigration judge... You're talking about the BIA. Where did the BIA specifically find what you just said? Well, in affirming that there was no nexus to any protected ground. And, Your Honor, I apologize. I'm going to grab the decision. It's on my desk right here. I apologize for not coming up to the podium with that. But it's in the affirmative at the bottom of page three of the record. That last sentence, the board categorizes what the IJ did is concluding that Ms. Rivera-Montenegro did not establish a nexus between the harm she experienced or feared and a protected ground. And so in that, the board is affirming the entire nexus determination with regard to any protected ground under the act, be it a particular social group or imputed political opinion, Your Honor. Counsel, I'm very troubled by what's at page two of the BIA's decision where they characterize what the IJ did as finding that they were motivated by a desire to obtain money rather than a desire to overcome a protected characteristic. I mean, it strikes me that this is eschewing mixed motive and going to a completely binary analysis, which I think under our case law is improper. Why am I wrong? Well, I think it's first it's factual here. When the agency is looking at the motives, these are these are factual determinations. And what with what we have here on the facts is that when she starts her business immediately, she was told that she had to pay the rent or extortion money to the game to keep her business open. And this happened. She testified as soon as she opened her store. So I'm looking at the IJ's decision at page eighty four of the record. Why a respondent has demonstrated that the gangs essentially use the lead response and status email living out a protective male in her household as leverage, et cetera. Isn't that enough where where the IJ specifically says that they were the petitioner has proven the gangs used her status as a female living without a protective male isn't isn't that enough as a fact finding? Well, the argument is that using that vulnerability did just what the IJ said. It leveraged that vulnerability to get her to pay. But it was not why the gangs targeted her for extortion. I don't understand that counsel. I mean, they wanted to get money. They always want to get money. But if they choose to particularly target single females living without a protective male because that's an easier target and that's what they do as the as it appears to me, the IJ found. I don't understand why the fact that their ultimate goal is money means that they're not going after her because of a protected class. Now, maybe I'm missing something here. Is it enough in the government's view that that doesn't count? Because ultimately what they want is money. Well, I think the government's argument here is that the record doesn't compel the conclusion that despite the fact that they reference that vulnerability in threats, the record doesn't compel the conclusion that that's why she was targeted for extortion. And when I what I'm referencing is, again, her testimony about regarding the timing of the the beginning of the extortion happening immediately as soon as she opened her store. She asked them why when she opened her store and they told her it was to keep the business open. It was their rules. They did not reference any status at that point of being a single female or someone without male support. And and then in addition, absolutely necessary that they always reference that. I mean, the IJ clearly found that that was a factor, a motive because she was a weaker target. But they don't have to say that every time, do they, if that was one of the motivations for targeting her? Well, I mean, I don't think that. Well, I think that you understand that our position is that I did not find that that was a motive for targeting her. The IJ characterized that as leveraging a vulnerability. But again, with respect, I think what the question that Judge Barrett just asked points out what the IJ found, and it seemed very clear, at least from the IJ's perspective, that that was a motivation for their targeting her. She was a weaker recipient of their threats, easier to be more successful there. Isn't that all we need in this situation? Well, I think we have to I mean, we have to look at the the entire record and whether it compels that conclusion that she was that that was a motive. And I think with her testimony that all businesses have to pay rent, we have expert testimony that most and sometimes all residents pay rent. And when you take that together. With respect, it seems to me what we're talking about here is whether the BIA applied the incorrect legal standard. And if it did, then what you're talking about really doesn't make a whole lot of difference, does it? If they applied the incorrect legal standard, if they didn't tie the nexus in here, as Judge Bennett was just talking about, doesn't that require a reversal, sending this back? Well, I guess what I'm trying to say is that our position is that the IJ did not find factually that that was a motive. And when it's with that finding that factual finding that it wasn't a motive at all in the mix, then there's no legal error when the board then doesn't engage in that mixed motive analysis. So my additional concern and I think the IJ did find it. But my additional concern is that it appears to me from this quote on page 78 that what the IJ, one of the reasons the IJ was rejecting the petitioner's claim was that when she the IJ says using someone's status as a means of leverage is different than targeting a respondent. Because she is different in a way that is regarded as offensive. So it makes me that one of the things the IJ was saying here is that because women weren't offensive to the gang, then petitioner can't win even if they were targeting her because she was a single female and that may have led the IJ in some way astray. You would agree that whether or not the gangs thought women are offensive or single mothers are offensive is irrelevant to our analysis, right? Yes, I don't agree that the whether or not the gang is offended by that fact is irrelevant, Your Honor. But I think the IJ here does clearly state, you know, in different ways throughout the decision that what the IJ is talking about is why she was targeted, Your Honor, and that simply that status or any of her proposed social groups or imputed political opinion was not why she was targeted. I don't think that that affects... You're over your time. Let me ask my colleague whether either has additional questions for the government. Okay, Mr. Warren, just give me a minute for rebuttal. Thank you, Your Honor. Thank you. I just want to make two or three points. One being that one point I didn't get to address was that on the imputed political opinion aspect of the claim, Judge Bennett read a quote where the IJ specifically found that one of the motives was control, that the gang wanted to control its territory. And the BIA transformed that aspect of the findings and focused only on money, saying that it was affirming the conclusion that the gang was motivated by money. I think it's the motivation of control that plays into the imputed political opinion claim where Petitioner, in speaking out against the gang's efforts to control its territory, is now facing escalating threats. The other point I want to make, and that's pages 79 and 82 where the IJ made the control findings. The other point I just briefly want to make is that I think one of the questions that's come up is this concept of the gang's ultimate purpose versus the means it uses to achieve that purpose. And there's a second – seventh circuit case, Gonzales-Rueno, 922F3346, that rejected the government's arguments that it was merely a means to an end. And if the end wasn't itself a protected status, that there was no nexus. Thank you, Your Honor. Other questions for Mr. Lawrence by my colleagues? Great. I want to thank both counsel for your argument. We appreciate it very much. The case of Rivera-Montenegro v. Barr is submitted.
judges: Boggs, M. Smith, Bennett